**FEMCO, INC., and Amrep, Inc.,**
**Appellants–Defendants,**

**v.**

**Joyce COLMAN and Richard Colman,**
**Appellees–Plaintiffs.**

No. 43A05–9409–CV–346.

Court of Appeals of Indiana,
Fifth District.

March 6, 1995.

R. Kent Rowe, R. Kent Rowe, III, William J. O'Mahony, Rowe, Foley & Gardner, South Bend, for appellants.

Patrick M. O'Brien, Kevin G. Harvey, Steers Sullivan, P.C., Indianapolis, for appellees.

## OPINION

BARTEAU, Judge.

In this interlocutory appeal brought pursuant to Ind.Appellate Rule 4(B)(6), Femco, Inc. and Amrep, Inc. (collectively Femco), the distributor and manufacturer respectively of a product known as "Vandalism Mark Remover," contend the trial court erred in denying their motion for summary judgment in a products liability action brought by Joyce and Richard Colman (Colman).

## FACTS

Joyce Colman worked as a custodian for the Northeast Dubois School Corporation. During July of 1989, Joyce was cleaning classrooms with a crew of other custodians, some of whom were using Vandalism Mark Remover to clean desks. The fumes from the Vandalism Mark Remover were quite strong, and Joyce experienced nausea and muscle weakness. Soon thereafter, Joyce's physical symptoms escalated, prompting her

to visit her family physician of ten years, Dr. Daniel Drew. At that time she complained of muscle pain throughout her body, the inability to bend her knees, loss of appetite, loss of her sense of taste, blurred vision, headaches, irritation to her lungs, and shortness of breath. Colman's symptoms continued to escalate and she was eventually hospitalized, and treated in part for adhesive capsulitis of both shoulders. In addition to the initial symptoms reported to Dr. Drew, Colman has been diagnosed as suffering from liver and bone marrow disorders, and joint dysfunction.

Femco filed a motion for summary judgment and as part of its designated materials submitted the deposition testimony of a neurologist stating that the results of tests he administered to Colman were inconsistent with toxic or chemical exposure. Femco also submitted the affidavit of a toxicologist of the opinion that Vandalism Mark Remover would not and did not cause the ailments and symptoms experienced by Colman.

In response to Femco's motion for summary judgment, Colman designated certain materials, including the affidavit of Dr. Drew, the Material Safety Data Sheet for Vandalism Mark Remover, and Amrep's answer to Plaintiff's Interrogatory Numbers 16, 17 and 18. The trial court denied the motion for summary judgment and this interlocutory appeal ensued.

### ISSUES

Three issues are raised, restated as:

1. Whether Colman failed to present evidence on the issue of proximate cause;

2. Whether Dr. Drew's affidavit was factually and legally sufficient; and

3. Whether the trial court erred in denying the motion to strike Dr. Drew's affidavit.

Because all three issues are interrelated, they will be discussed together.

### STANDARD OF REVIEW

■ Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material fact and he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Pierce v. Bank One–Franklin, NA* (1993), Ind.App., 618 N.E.2d 16, 18, *trans. denied.* At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

■ When reviewing a motion for summary judgment, this Court stands in the shoes of the trial court. This Court must liberally construe all designated evidentiary matter in favor of the non-moving party and resolve any doubt against the moving party. Even if it appears that the non-moving party will not succeed at trial, summary judgment is inappropriate where material facts conflict. *Fidelity Financial Services v. Sims* (1994), Ind.App., 630 N.E.2d 572, 574.

### DENIAL OF MOTION FOR SUMMARY JUDGMENT

At issue here is whether there exists a material issue of fact with regard to causation in light of the expert opinions presented by Femco that Vandalism Mark Remover did not cause Colman's symptoms and ailments.

In support of its Motion for Summary Judgment, Femco submitted the deposition of Dr. Kevin Kristl. Dr. Kristl, a neurologist, conducted an independent examination of Joyce Colman in relation to her worker's compensation claim. Dr. Kristl performed a variety of tests on Colman, including an MRI, EEG, EMG, and nerve conduction studies. In response to Femco's questioning, Dr. Kristl stated that if Colman's injuries were due to toxic exposure, he would expect to see some evidence of that revealed in one of the tests he performed, and that the test results were inconsistent with his experience with patients who had suffered a known toxic exposure.

Femco also submitted the affidavit of Laura Green, a Ph.D. and board certified toxicologist. Green stated her opinion that, based upon a reasonable degree of toxicological certainty, Colman's inhalation of Vandalism Mark Remover would not and did not cause the complained of symptoms and injuries.[1]

In light of Femco's expert opinions supporting its position that Vandalism Mark Remover did not cause Colman's injuries, the burden shifted to Colman to present some contrary evidence to withstand the motion for summary judgment. T.R. 56(C). Being so obliged, Colman responded with the affidavit of Dr. Drew, the Material Safety Data Sheet covering Vandalism Mark Remover, and Amrep's answer to Plaintiff's Interrogatory No. 16, 17 and 18.

Dr. Drew's affidavit establishes that he is a medical doctor licensed to practice in Indiana, that he was Joyce Colman's family physician at the time she was exposed to Vandalism Mark Remover, that he has examined her and treated her for the complained of symptoms, that he has reviewed both her medical records and the Material Safety Data Sheet for Vandalism Mark Remover, and that:

4. During an office visit on or about July 1989, Mrs. Colman complained of pain in both shoulders, headaches, dizziness, nausea, irritation to her lungs and chest and other symptoms. At that time Mrs. Colman reported to me her exposure to a chemical cleaning agent called Vandalism Mark Remover. Joyce Colman experienced problems with three different bodily systems; she had problems with her liver, anemia or bone marrow, and joint dysfunction which involved orthopedic problems. With all three bodily systems being involved, I am certain, within a reasonable degree of medical certainty, that Joyce Colman's exposure to the toxic contents of Vandalism Mark Remover was the proximate cause of her injuries.

5. These symptoms developed to the point that Joyce was hospitalized in the Memorial Hospital and Health Care Center in Jasper, Indiana for four (4) days where I participated in treatment for her of severe adhesive capsulitis of both shoulders. Following a closed manipulation of both shoulders, the patient was carefully monitored and then released to my care on July 16, 1990.

6. It is my professional opinion, within a reasonable degree of medical certainty, that Joyce Colman's shoulder difficulty/adhesive capsulitis and other symptoms were related to her exposure to the "Vandalism" cleaner on July 18, 1989. It is my professional opinion that exposure to the Vandalism cleaner proximately caused the aforementioned physical injuries to Joyce Colman.

7. It is my professional opinion that, as a result of the aforementioned exposure, Mrs. Colman sustained permanent partial impairment of her left and right shoulders based on loss of glenohumeral motion.

The Material Safety Data Sheet referred to by Dr. Drew lists the ingredients of Vandalism Mark Remover.[2] Under a section of that document entitled "Health Hazard Data," acute effects of excessive inhalation of vapors of Vandalism Mark Remover are listed as headache, dizziness, asphyxia, anesthetic effects and possible unconsciousness. In the same section under the "Chronic Effects" listing is the following: "Lab animals have experienced anemia, liver, kidney, lung, blood damage to Glycol Ether EB. May cause cardiac abnormality, liver abnormalities, kidney and/or lung damage." This last sentence is footnoted as pertaining to excessive exposure to the raw materials of the mixture.

1. Contrary to representations by Femco, Green does not state in her affidavit her belief that Vandalism Mark Remover could not have caused Colman's symptoms or injuries. Rather, Green uses the terms would not and did not, a quite substantial difference.

2. In its reply brief, Femco attempts to make an issue of the fact Dr. Drew states in his affidavit that he reviewed the Material Safety Data Sheet for **Femco** Vandalism Mark Remover and the Material Safety Data Sheet designated by Colman was for **Misty** Vandalism Mark Remover. However, there is no allegation that the two products differ in any way and Femco acknowledges that the Material Safety Data Sheet was prepared by Amrep and arguably authenticated by them. We thus decline the invitation to make this an issue.

Femco argues that Dr. Drew's affidavit is insufficient to defeat their motion for summary judgment because it contains no expert toxicological or neurological evidence of causation directly contradicting that supplied by Green and Dr. Kristl. No authority is cited for the proposition that counterbalancing evidence must be of the same ilk as that presented by the opposing party and we know of none. While it is true that "[a] party cannot create a genuine issue of fact merely by presenting an expert witness who is willing to express an unsupported opinion that favors the party's position," *Miller v. Monsanto Co.* (1993), Ind.App., 626 N.E.2d 538, 544, neither is a party required to match expert for expert the other side's evidence. What is necessary is that the party seeking to defeat summary judgment demonstrate the existence of a material issue of fact by presenting competent evidence thereon. Further, Femco seems to contend that Green's affidavit is definitive on the issue of causation. However, as noted earlier, Green does not opine that Vandalism Mark Remover *could not* have caused any of Colman's problems. Rather, she uses the terms *would not* and *did not*, and not even with respect to every symptom Colman allegedly experienced.

Femco also alleges that Dr. Drew's affidavit is insufficient to defeat their motion for summary judgment because it lacks any foundation for his conclusion that exposure to Vandalism Mark Remover was the culprit behind Colman's troubles and was therefore conclusory. Femco relies on *Monsanto*, 626 N.E.2d 538, and *Porter v. Whitehall Laboratories, Inc.* (S.D.Ind.1992), 791 F.Supp. 1335, *aff'd*, 9 F.3d 607 (7th Cir.1993), to support its argument.

*Monsanto*, however, is easily distinguishable from the present situation. The affidavit in question in *Monsanto* was found deficient because it was not made on personal knowledge, it was based on information not properly before the court and it contradicted the affiant's sworn deposition testimony. Indiana Trial Rule 56(E) provides in part that "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." The affidavit in *Monsanto* met none of these requirements.

The only similarity between the affidavit in *Monsanto* and the one before us is that both were executed by family practice physicians with no special expertise in the disputed area. Dr. Drew's affidavit establishes that he examined and treated Colman for the complaints at issue here, that he was aware of the ingredients of Vandalism Mark Remover and their potential effects and that he was of the opinion, as a medical doctor with first hand knowledge of the situation, that the product Vandalism Mark Remover was responsible for Colman's ailments. Dr. Drew's affidavit was made on personal knowledge. He was Colman's family physician and had examined and treated her for all of the ailments complained of. His affidavit was based on admissible evidence, including the Material Safety Data Sheet for Vandalism Mark Remover. Dr. Drew was competent to testify as to the matters stated in his affidavit. His course of treatment and diagnosis of her illness were within his expertise. Thus, Dr. Drew's conclusion was not without a foundation nor was his affidavit merely conclusory, and it provided sufficient contrary evidence to the expert opinions presented by Femco to defeat the motion for summary judgment.

This case is likewise distinguishable from *Porter*, where summary judgment was granted in favor of defendants because plaintiff's experts merely speculated about a causal connection between use of Ibuprofen and renal failure. All acknowledged that there was no scientific data establishing such a connection. In contrast, in the case before us, in addition to Dr. Drew's affidavit, the court had before it the Material Safety Data Sheet for Vandalism Mark Remover and Amrep's answers to Interrogatories 16, 17 and 18. As noted earlier, the Material Safety Data Sheet contained information concerning the possible toxic effects of exposure to Vandalism Mark Remover, many of which were similar to those experienced by Colman. Likewise, Interrogatories 16, 17 and 18 establish that all of the ingredients of Vandalism Mark

Remover are toxic and that possible harmful effects include skin and eye irritation, headaches, nausea, bad taste, impairment of reactions time and effects on the central nervous system, again paralleling many symptoms complained of by Colman. Thus, there was scientific data connecting the ingredients of Vandalism Mark Remover to various health problems, eliminating the defect in the plaintiff's case in *Porter*.

The combination of Dr. Drew's affidavit as the treating physician, the Material Safety Data Sheet, and the Interrogatory answers sufficiently raise a material issue of fact as to the issue of causation and the trial court did not err in denying Femco's motion for summary judgment.

Therefore, the decision of the trial court is AFFIRMED.

SHARPNACK, C.J., and ROBERTSON, J., concur.