# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**ROGER L. PARDIECK**
**KAREN M. DAVIS**
**SARAH MILLER HYATT**
The Pardieck Law Firm
Seymour, Indiana

**MICHAEL J. STAPLETON**
**ELIZABETH B. SEARLE**
Ball, Eggleston P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**LONNIE D. JOHNSON**
**PATRICIA S. BERNENS**
Clendening Johnson & Bohrer, P.C.
Bloomington, Indiana

**JOSEPH G. EATON**
**DEAN T. BARNHARD**
**PAUL L. JEFFERSON**
Barnes & Thornburg, LLP
Indianapolis, Indiana



FILED

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JOHN GRESSER and JANICE GRESSER, Individually and as parents and natural guardians of ELIZABETH GRESSER and REBEKAH GRESSER, <br><br> Appellants/Plaintiffs, <br><br> vs. <br><br> THE DOW CHEMICAL COMPANY, INC. DOWELANCO n/k/a DOW AGROSCIENCES LLC, and RELIABLE EXTERMINATORS, INC., <br><br> Appellees/Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )     No. 79A02-1111-CT-1014 |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Robert M. Hall, Special Judge
Cause No. 79D01-0403-CT-25

**April 30, 2013**

**OPINION – FOR PUBLICATION**

**PYLE, Judge**

## STATEMENT OF THE CASE

John and Janice Gresser, individually, and as parents and natural guardians of Elizabeth and Rebekah Gresser (collectively, "the Gressers"), filed a product liability action against The Dow Chemical Company, Inc., and DowElanco n/k/a Dow Agrosciences LLC (collectively, "Dow") and a negligence action against Reliable Exterminators, Inc. ("Reliable").

Dow responded to the Gressers' suit by filing several motions for summary judgment and motions to strike. Reliable also filed or joined in the summary judgment motions. The Gressers appeal the trial court's grant of some of these summary judgment motions, while Dow and Reliable cross-appeal the trial court's denial of other summary judgment motions. In addition, Reliable cross appeals the trial court's denial of its motion to exclude and/or strike depositions, affidavits, and other evidence proposed by the Gressers' expert witnesses. The issues delineated below are dispositive.

We affirm in part, reverse in part, and remand for further proceedings.[1]

## ISSUES

---

[1] Oral argument was held on February 20, 2013. We thank counsel for their able representation.

1. Whether summary judgment for Dow is warranted under the Indiana Product Liability Act ("IPLA").

2. Whether the trial court erred in denying Reliable's motion to exclude or strike the evidence proposed by the Gressers' causation experts.

3. Whether the trial court erred in denying Reliable's motion for summary judgment on the Gressers' negligence claim.

4. Whether the trial court erred in denying Reliable's summary judgment motion on the issue of punitive damages.

5. Whether the trial court erred in determining that this case is preempted by federal law.

FACTS AND PROCEDURAL HISTORY

On January 31, 2000, Reliable's owner, Robert Hanstra ("Hanstra"), performed a pre-treatment inspection of a house owned by James Galloway and marketed by REMAX Realty ("REMAX"). Hanstra found evidence of what he believed to be termite activity, and he recommended that the house be treated for termites. Reliable subsequently entered into a contract with REMAX that required Reliable to apply a termiticide to the house. The contract was in connection with the sale of the house to New Chauncey Housing ("New Chauncey").

On February 11, 2000, Reliable employee Dave Neal treated the house by applying a termiticide, Dow's Dursban TC, to get rid of wood destroying insects. At all times, Dursban TC was registered with the Environmental Protection Agency ("EPA") according to the requirements of the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA").

3

Thirteen months after Reliable's application of Dursban TC, the Gressers purchased the house, even though they detected a very strong odor in the house. On May 10, 2001, two months after the purchase, the Gressers moved into the house, which still emanated a very strong odor.

After moving into the house, the Gressers reportedly experienced continual health problems, including unremitting flu-like symptoms, colds, excessive secretions, dizziness, fatigue, and other physical problems. The Gressers' daughters reportedly developed irritability, behavior problems, and learning difficulties. In June of 2002, the Gressers moved out of the house because they feared that something in the house was causing their various illnesses.

On March 17, 2004, the Gressers filed product liability claims against Dow and negligence claims against Reliable. Their product liability claims are based on Dow's alleged failure to (1) use reasonable care to instruct about the use of the product; (2) warn about its dangers; and (3) properly test and design the product. The Gressers' claims against Reliable are based on their belief that Reliable negligently (1) chose to apply a termiticide where none was necessary; (2) selected Dursban TC instead of a safer product; (3) misapplied Dursban TC; and/or (4) failed to provide a warning to future occupants of the house.

Dow filed separate motions for summary judgment pertaining to the validity of the Gressers' failure to warn claims and various other issues pursuant to the Gressers' claims

4

under IPLA. Dow also filed a motion for summary judgment alleging that the Gressers' failure to warn claims were preempted by federal law, specifically FIFRA and EPA regulations. Dow further filed a motion for summary judgment alleging that the Gressers' claim for punitive damages was unsubstantiated. In addition, Dow filed various motions to strike designated evidence, including expert witness affidavits.

The trial court granted Dow's summary judgment motion pertaining to the validity of the Gressers' failure to warn claims under IPLA. The trial court also granted Dow's motion for summary judgment on the issue of federal preemption. The trial court further granted Dow's summary judgment motion pertaining to the Gressers' claim for punitive damages. The trial court denied all other Dow motions without substantive comment, including a motion by both Dow and Reliable to exclude two of the Gressers' expert witnesses.

Reliable filed a motion for summary judgment and joined with Dow on other motions. The trial court denied Reliable's motion for summary judgment and other motions. However, the trial court granted summary judgment in favor of Reliable on the federal preemption issue.[2]

Additional facts will be disclosed below as necessary.

<u>DISCUSSION AND DECISION</u>

---

[2] A trial court "may grant summary judgment for any other party upon the issues raised by the motion although no motion for summary judgment is filed by such party." Indiana Trial Rule 56(B).

Summary judgment is appropriate if there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. *City of Terre Haute v. Pairsh*, 883 N.E.2d 1203, 1206 (Ind. Ct. App. 2008), *trans. denied.* A genuine issue of material fact exists "'where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue.'" *Haub v. Eldridge*, 981 N.E.2d 96, 101 (Ind. Ct. App. 2012) (quoting *Scott v. Bodor*, 571 N.E.2d 313, 318 (Ind. Ct. App. 1991)). When reviewing entry of summary judgment, we stand in the shoes of the trial court. *Koppin v. Strode*, 761 N.E.2d 455, 460 (Ind. Ct. App. 2002), *trans. denied.*

The moving party bears the burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Boston v. GYN, Ltd.*, 785 N.E.2d 1187, 1190 (Ind. Ct. App. 2003), *trans. denied.* We review only the designated evidentiary material in the record, construing that evidence liberally in favor of the nonmoving party so as not to deny that party its day in court. *Myers v. Irving Materials*, 780 N.E.2d 1226, 1228 (Ind. Ct. App. 2003). However, once the movant has carried its initial burden of going forward under Indiana Trial Rule 56(C), the nonmovant must come forward with sufficient evidence demonstrating the existence of genuine factual issues that should be resolved at trial. *Clary v. Dibble*, 903 N.E.2d 1032, 1038 (Ind. Ct. App. 2009), *trans. denied.* If the nonmovant fails to meet its burden, and the law is with the movant, summary judgment should be granted. *Id*.

6

Our standard of review is not altered by the fact that the parties made cross-motions for summary judgment. *Sapp v. Flagstar Bank, FSB*, 956 N.E.2d 660, 663 (Ind. Ct. App. 2011). Instead, we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

1.      Summary Judgment on the Gressers' IPLA Claims

As noted above, the trial court granted Dow's summary judgment motion regarding the validity of the Gresser failure to warn claims under IPLA. However, the trial court denied Dow's summary judgment motion based upon the Gressers' failure to satisfy IPLA requirements for proving that a product was defective. The Gressers appeal the grant of the former motion, and Dow cross appeals the denial of the latter motion. The motions are inextricably linked, and we base our decision upon the evidence designated by both parties and upon the dictates of federal and state law.

IPLA governs all actions that are (1) brought by a user or consumer; (2) against a manufacturer or seller; and (3) for physical harm caused by the product, regardless of the substantive legal theory or theories upon which the action is brought. Ind. Code § 34-20-1-1. Liability under IPLA is imposed "upon sellers of a product in a defective condition that is unreasonably dangerous to any user or consumer." *Warriner v. DC Marshall Jeep*, 962 N.E.2d 1263, 1267 (Ind. Ct. App. 2012), *trans. denied*. A product is defective if, at the time it is conveyed by the seller to another party, it is in a condition that is not contemplated by reasonable persons among those expected users or consumers of the

7

product and that will be unreasonably dangerous to the expected user or consumer when used in reasonably expectable ways of handling of consumption. Ind. Code § 34-20-4-1. The requirement that the product be in a defective condition focuses on the product itself while the requirement that the product be unreasonably dangerous focuses on the reasonable expectations of the consumer. *Baker v. Heye-America*, 799 N.E.2d 1135, 1140 (Ind. Ct. App. 2003), *trans. denied*. A product may be dangerous in the ordinary sense but not "unreasonably dangerous" for product liability purposes under IPLA. *Id.*

Ind. Code § 34-20-5-1 provides a rebuttable presumption that the product which caused the physical harm is not defective and the manufacturer or seller of the product is not negligent if, before the sale by the manufacturer, the product "complied with applicable codes, standards, regulations, or specifications established, adopted, promulgated, or approved by the United States or by Indiana, or by an agency of the United States or Indiana." FIFRA requires that all pesticides sold or distributed in the United States must first be registered with the EPA. 7 U.S.C. § 136a(a). A FIFRA registration is a "product-specific license describing the terms and conditions under which the product can be legally distributed, sold, and used." *Reckitt Benckiser, Inc. v. EPA*, 613 F.3d 1131, 1133 (D.C. Cir. 2010) (citing 7 U.S.C. § 136a(a), (c)-(e)). The EPA "can only register a pesticide upon determining that 'it will perform its intended function without unreasonable adverse effects on the environment' and that 'when used in accordance with widespread and commonly recognized practice it will not generally

8

cause unreasonable adverse effects on the environment.'" *Id*. (quoting 7 U.S.C. § 136a(c)(5)(C), (D)). FIFRA defines "environment" to include "water, air, land, and all plants and man and other animals living therein, and the interrelationships which exist among these." 7 U.S.C. § 136(j). In registering any pesticide, the EPA must make an official agency determination that the product does not pose any "unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of [its] use." 7 U.S.C. § 136(bb).

As a result, Dow is entitled to the statutory presumption pursuant to Indiana Code § 34-20-5-1. Dursban TC's compliance with FIFRA and Indiana law has a significant impact under IPLA's consumer expectation-based product liability regime because the risk of harm has been evaluated by agencies charged with the duty of monitoring the effects of Dursban TC. Furthermore, Dursban TC's labeling and warnings have been approved by agency experts.

In this case, the undisputed designated evidence establishes that Dursban TC was registered with the EPA, pursuant to FIFRA (7 U.S.C. § 136-136y) and its implementing regulations, from February of 1981 to March of 2009. The undisputed evidence also establishes that at all times relevant in 1999 and prior to and including February of 2000, that the data submitted by Dow in support of the registration "was in full compliance with Indiana law." (Dow's App. 1463). The designated evidence further establishes that Dow has always sold Dursban TC with a copy of the current EPA-approved label attached to

9

the containers of the product at the time of sale. Dow has never sold Dursban TC directly to the general public but instead sold the product to distributors who sold it to applicators.

Indiana Code § 34-20-4-2 provides that a product is defective under IPLA if the seller fails to (1) properly package or label the product to give reasonable warnings of danger; or (2) give reasonably complete instructions on proper use of the product; when the seller, by exercising reasonable diligence, could have made such warnings or instructions available to the user or consumer. Here, the label, warnings, and instructions were reviewed by agency experts and eventually provided to Reliable, a sophisticated user.

Despite the lack of evidence showing Dursban TC to be defective pursuant to Indiana Code § 34-20-4-2, the Gressers claim that their injuries would not have occurred absent Reliable's negligence. However, Indiana Code § 34-20-4-3 provides that a product is not defective if "it is safe for reasonably expectable handling and consumption." The combination of federal and state approval of the product, combined with the nature of the Gressers' claim against Reliable, constitutes undisputed evidence that Dursban TC was not defectively produced by Dow.

In response, the Gressers also argue that designated evidence pertaining to pre-2000 settlements between Dow and the EPA rebuts the statutory presumption; however, this evidence does not establish that Dursban TC was ever unregistered. Indeed, as a part of a settlement between Dow and EPA, the Dursban TC label was amended to contain

10

stronger warnings than past labels. Therefore, the Gressers arguably benefitted from the pre-2000 conflict. Furthermore, the Gressers' evidence does not prove a product defect. *See In re Trasylol Products Liability Litigation*, 763 F.Supp.2d 1312, 1329-30 (S.D. Fla. 2010) (holding that evidence or testimony pertaining to conflicts with a federal agency is generally irrelevant to a plaintiff's state-law claims and thus inadmissible); *Webster v. Pacesetter, Inc.*, 259 F.Supp.2d 27, 37 (D.C. 2003) (holding that a plaintiff cannot create an issue of fact regarding a state-law tort claim through evidence about the defendant's communications with a federal agency).

Because it is undisputed that (1) Dow complied with federal regulations and state law label requirements; and (2) the Gressers presented no admissible evidence to rebut the presumption that Dursban TC is not defective, Dow is entitled to judgment as a matter of law. The trial court erred in denying Dow's motion for summary judgment under IPLA on the Gressers' defective design claim. Therefore, the Gressers' failure to warn and defective design theories under IPLA are ineffectual.

2.      Motion to Strike or Exclude Evidence Proposed by the Gressers' Expert Witnesses

On cross appeal, Reliable contends that the trial court erred in not granting its motion to strike and/or exclude the designated depositions, studies, and affidavits of the Gressers' medical causation experts, Dr. J. Routt Reigart ("Reigart") and Dr. William Meggs ("Meggs"). Reliable argues that Reigart's and Meggs' opinions are inadmissible on the issue of causation because the opinions meet neither the requirements of Indiana

11

Evidence Rule 702 (stating that scientific testimony is admissible "only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable") nor Indiana Evidence Rule 703 (stating that experts "may testify to opinions based on inadmissible evidence, provided that it is the type reasonably relied upon by experts in the field").

The decision to admit or exclude proffered expert testimony is entrusted to the sound discretion of the trial court. *PSI Energy, Inc. v. Home Ins. Co.*, 801 N.E.2d 705, 738 (Ind. Ct. App. 2004), *trans. denied*. We will reverse the trial court only if its decision is clearly against the logic and effect of the facts and circumstances. *Id*.

Specific causation in a toxic tort case is "usually" supported by evidence of the plaintiffs' exposure "to a particular causative agent and the dose or amounts thereof, the temporal relationship between the exposure and the occurrence of the [injuries], scientific conclusions as to the amount of exposure necessary to cause the disease, and the elimination of other possible causes or explanations for the plaintiff[s'] [injuries]." *Aurand v. Norfolk S. Ry., Co.*, 802 F.Supp.2d 950, 959 (N.D. Ind. 2011). Indiana courts do not require proof of each element in every case but will exclude expert testimony where none of the elements is shown. *Outlaw v. Erbrich Products Co.*, 777 N.E.2d 14, 29 (Ind. Ct. App. 2002), *trans. denied*. In particular, we have held that when an expert witness testifies in a chemical exposure case "that the exposure has caused a particular condition because the plaintiff was exposed and later experienced symptoms, without

12

having analyzed the level, concentration *or* duration of the exposure to the chemicals in question, and without sufficiently accounting for the possibility of alternative causes," the expert's opinion is insufficient to establish causation. *Id.* (emphasis added). "An expert's opinion is insufficient to establish causation when it is based *only* upon a temporal relationship between an event and a subsequent medical condition." *Id.* (emphasis added).

In *May v. Ashley F. Ward, Inc.*, 952 N.E.2d 224 (Ind. Ct. App. 2011), we distinguished *Outlaw* in affirming a trial court's denial of a manufacturer's motion to exclude an expert causation witness in a case where the plaintiff claimed that heavy metals caused him to contract sinus cancer. We emphasized that the expert knew from an examination of the "Material Safety Data Sheets" which heavy metals the plaintiff had been daily exposed to at work. *Id.* at 231, n.7. We further emphasized that the expert "explained the rarity of this type of cancer, its link to heavy metal exposure, and the fact that he ruled out several other potential causes." *Id.* We noted that in *Outlaw*, "the chemicals at issue were unknown [and] . . . the expert had not sufficiently accounted for the possibility of alternative causes. Because the expert's opinion was based primarily on the existence of a temporal relationship, we found that it amounted to subjective belief and unsupported speculation." *Id.*

In *Hottinger v. Trugreen Corp.*, 665 N.E.2d 593, 597 (Ind. Ct. App. 1996) (partially overruled on other grounds in *Dow Chemical Co. v. Ebling*, 753 N.E.2d 633,

13

636 (Ind. 2001)), *trans. denied*, we held that expert testimony was admissible based on temporal proximity of exposure and the onset of symptoms; a medical history; a medical examination; diagnostic evaluations; and the expert's education and experience. Similarly, in *Femco, Inc. v. Colman*, 651 N.E.2d 790, 794 (Ind. Ct. App. 1995), we affirmed the trial court's refusal to exclude a physician's affidavit where the distributor and manufacturer of a chemical argued that the affidavit contained no expert toxicological or neurological evidence of causation and that it lacked any foundation for the conclusion that exposure to the chemical was "the culprit behind [the plaintiff's] troubles and was therefore conclusory." We held that the affidavit was admissible because it established that the affiant (1) examined and treated the plaintiff for her injury; (2) knew of the chemical ingredients and their potential effects; and (3) diagnosed the chemical as the cause of the plaintiff's injury. *Id*. In so holding, we noted that the affiant had read the chemical's "Material Safety Data Sheet," which included a list of possible toxic effects of the chemical that paralleled those of the plaintiff. *Id*.

In *Norfolk Southern Ry. Co. v. Estate of Wagers*, 833 N.E.2d 93, 104 (Ind. Ct. App. 2005), *trans. denied*, we held that the trial court properly admitted an expert's testimony where the expert obtained a history of chemical exposure by reviewing the plaintiff's medical records and the depositions of co-workers, reviewed relevant medical literature, and conducted a differential diagnosis. *Id*. at 104. We reviewed *Hottinger* and

14

*Femco* and concluded that neither required specific evidence of dose or exposure level. *Id*. at 105.

Kannankeril v. Terminix Intern., Inc., 128 F.3d 802 (3rd Cir. 1997) is instructive. In *Kannankeril*, as in the instant case, the plaintiffs alleged they suffered injuries from exposure to chloropyrifos (a key ingredient in Dursban TC). The plaintiffs' expert based his opinion of causation on the temporal relationship between the exposure and the symptoms, the nature of the symptoms, and a "differential diagnosis" attempting to rule out other causes. *Id*. at 807-09. The court rejected the district court's finding that the expert had no knowledge of the plaintiffs' degree of exposure, stating that the expert "had sufficient knowledge of exposure" from his review of application records showing when, where, and how much pesticide was applied. *Id*. at 808. The court noted that "the toxic effects of organophosphates [such as chlorpyrifos] are well recognized by the scientific community" and concluded that the expert's opinion contained a factual basis and supporting scientific theory. *Id*. at 809.

Here, the trial court denied the motion to strike and/or exclude the evidence presented by Reigart and Meggs after it reviewed a plethora of information and theories from both parties. Reigart's assessment addressed duration of the exposure, circumstances consistent with peer-reviewed literature, and exposure data from multiple sources. He reviewed medical records, social worker assessments, occupational therapist notes, neuropsychological evaluations, and examinations of the Gressers' daughters. He

15

also conducted a differential diagnosis to rule out other causes. Meggs opined that the duration of the exposure resulted in acute symptoms, and he explained that in 95 percent of cases the precise amount of exposure cannot be determined. He examined medical, family, environmental, and social history pertaining to a time period before and after the exposure, and he conducted physical examinations. Meggs also performed a differential diagnosis of acute symptoms and chronic illnesses for each family member.

In this case, the Gressers' medical causation experts' testimony was based on much more than the temporal relationship between the event and the subsequent development of medical conditions. Therefore, our review of the record and the parties' arguments reveals that the trial court did not abuse its discretion in denying Reliable's motion to exclude the testimony of Reigart and Meggs.

3.    Reliable's Motion on Causation and Failure to Warn

As stated above, the Gressers' claims against Reliable are based on their belief that Reliable negligently (1) chose to apply Dursban TC when no application was necessary; (2) selected Dursban TC instead of a safer product; (3) misapplied Dursban TC; and/or (4) failed to provide a warning to the Gressers as foreseeable occupants of the house where the application was made. On cross appeal, Reliable contends that the trial court erred in not granting its motion for summary judgment on the Gressers' claims of negligent application and/or negligent failure to warn because Reliable owed no duty to the Gressers.

16

In order to recover on a negligence claim, plaintiffs must establish three elements: "(1) a duty on the part of the defendant to conform its conduct to a standard of care arising from its relationship to the plaintiffs; (2) the defendant's failure to conform its conduct to the requisite standard of care required by the relationship; and (3) injury to the plaintiffs proximately caused by the defendant's breach of its duty." *Holt v. Quality Motor Sales, Inc.*, 776 N.E.2d 361, 365 (quoting *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991)), *trans. denied.* Summary judgment is rarely appropriate in negligence actions; however, issues of duty are questions of law for the court and may be appropriate for disposition by summary judgment. *Id.* Duty exists where reasonable persons would recognize it and agree that it exists. *Bradley v. Brown*, 852 F.Supp. 690, 695 (N.D. Ind. 2002). The following three factors must be balanced in considering whether to impose a duty at common law: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the persons injured; and (3) public policy concerns. *Holt*, 776 N.E.2d at 366 (quoting *Webb*, 575 N.E.2d at 995).

Where, as here, the parties do not argue, and we do not detect, any special relationship between the parties that would give rise to a duty of care, the Court's focus is "on whether the type of harm actually inflicted was reasonably foreseeable." *See Bradley*, 852 F.Supp. at 695. Reliable maintains that foreseeability and public policy considerations militate against a finding of a duty to warn the Gressers. Reliable argues that it could not foresee the identity of the future buyers of the house and that it was

17

impracticable as a matter of public policy to expect it to provide warnings to such unidentified buyers. However, Reliable knew that the house it treated with a highly toxic product was for sale, and it knew or should have known that the house was going to be purchased and occupied by people who could be injured by the product. Therefore, it was foreseeable that the future occupants, the Gressers, could be injured by misapplication of the product. Furthermore, public policy mandates that an applicator of such toxic materials conform its conduct to avoid injury to unsuspecting future occupants. *Id*.

Balancing the three factors originally listed in *Webb*, we conclude that Reliable had a duty to warn the Gressers. The trial court did not err in denying Reliable's summary judgment motion on this issue.

4.      Reliable's Motion on Punitive Damages

On cross-appeal, Reliable contends that the trial court erred in denying its motion for summary judgment on the issue of punitive damages. Reliable contends that the Gressers' allegations, even if true, are insufficient to establish that an award of punitive damages is warranted.

Whether a party may recover punitive damages is usually a question of fact for the fact finder to decide; however, it may be decided as a matter of law. *Williams v. Younginer*, 851 N.E.2d 351, 358 (Ind. Ct. App. 2006), *trans. denied.* Furthermore, proof that a tort was committed does not necessarily establish the right to punitive damages. *Id*.

18

Punitive damages may be awarded only if there is clear and convincing evidence that the defendant acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing. *Id.*

Here, the Gressers designated evidence which they contend is sufficient to create a genuine issue of material fact on the issue of punitive damages. The Gressers point to evidence indicating that Reliable ignored numerous label warnings when it (1) applied Dursban TC where there was no evidence of active infestation; (2) did not properly vent the house; (3) failed to seal obvious cracks, and (4) did not turn off the furnace during application of the termiticide. Reliable disputes this evidence.

As a result, there is a genuine issue of material fact as to whether Reliable committed gross negligence in ignoring the label warnings, thereby allowing toxic materials to circulate throughout the house whenever the furnace was turned on. In addition, the conflicting contentions create a genuine issue of material fact as to whether Reliable was grossly negligent in not warning the Gresssers that Dursban TC had been determined by the EPA to be particularly harmful to children and to be the source of neurological damage. The designated evidence also might allow a jury to determine whether Reliable knew that the EPA was removing Dursban TC from the market. Knowing the particular dangers of Dursban TC, Reliable chose to apply it when at least ten other liquid termiticides were available. Furthermore, Reliable chose not to inform

19

the Gressers that the persistent odor in the house could be related to an off-target application; instead, it offered to vent the house upon payment by the Gressers.[3]

Our review of the designated evidence discloses that there is sufficient evidence to create a fact question pertaining to the Gressers' punitive damage claim. Accordingly, the trial court did not err in denying Reliable's motion.

5.      Federal Preemption

As we note above, the trial court granted summary judgment for both Dow and Reliable on the issue of federal preemption. Specifically, the trial court determined that the Gressers' product liability and negligence claims were preempted pursuant to *PLIVA, Inc. v. Mensing*, 131 S.Ct. 2567 (2011). The Gressers contend that the trial court erred in granting summary judgment on this issue.

Preemption is based on the Supremacy Clause of the United States Constitution, which provides that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., Art. VI, cl. 2. The United States Supreme Court has established two principles to guide preemption analysis: (1) in determining

---

[3] Reliable notes that it did not learn of the odor until the Gressers informed them of the odor after they had moved from the house. Reliable argues that because the Gressers never reoccupied the house, "there is no basis whatsoever for a claim of duty and negligence premised on this [knowledge]: any harm to the [Gressers] due to toxic exposure, or lack of warning, had already occurred at this time." (Reliable's Br. at 39 n.3). As we held in *Wohlwend v. Edwards*, 796 N.E.2d 781, 785 (Ind. Ct. App. 2003), we are "unwilling to say that, in a case involving punitive damages, post-incident acts could never be relevant to the issue of punitive damages in conjunction with the incident giving rise to the plaintiff's claim." Here, Reliable's post-application failure to warn the Gressers of the odor's significance could be determined by the fact finder to be consistent with a pattern of gross negligence.

20

whether preemption is proper, the purpose of Congress is the ultimate touchstone; and (2) in all preemption cases, particularly those in which Congress has legislated, the historic powers of the states are not to be superseded. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).

Courts have recognized three types of preemption: express preemption; field preemption; and conflict preemption. Express preemption occurs when Congress includes a clause in a statute that explicitly removes specific powers from the states. *See CSX Transp. Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). In the absence of express preemption, field preemption occurs when federal law encompasses so much of an area of law that courts can infer that Congress left no opportunity for state law to supplement federal law. *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990). The third type of preemption, which is discussed in *PLIVA*, is conflict preemption. 131 S.Ct. 2577. Conflict preemption occurs when federal law impliedly preempts state law because it is impossible for a private party to comply with both state and federal law. *Wyeth*, 555 U.S. at 563. To prevail on this defense, a defendant must demonstrate that compliance with both federal and state law is a "physical impossibility." *Id.* at 573. Impossibility preemption is a "demanding defense, and the mere possibility of impossibility is not enough to successfully argue for preemption." *Id.*

Here, we have already determined that the Gressers have not established their product liability claims against Dow under IPLA. Dow is not required to defend against

21

the claims, and there is no viable conflict issue under *PLIVA*. Thus, the trial court's grant of summary judgment was improvidently granted.

Furthermore, the Gressers' failure to warn claim against Reliable does not render compliance with both state and federal law impossible. As our Supreme Court held in *Dow Chemical Co. v. Ebling*, 753 N.E.2d 633, 640 (Ind. 2001), "[t]he use of state tort law to further the dissemination of label information to persons at risk clearly facilitates rather than frustrates the objectives of FIFRA and does not burden [an applicator's] compliance with FIFRA." Again, the trial court's grant of summary judgment on this issue was improper.

## CONCLUSION

The trial court correctly granted Dow's summary judgment motion on the Gressers' failure to warn claims under IPLA. However, the trial court erred in denying Dow's related summary judgment motion on the Gressers' failure to satisfy IPLA requirements. In addition, the trial court improvidently granted Dow's summary judgment motion pertaining to federal preemption.

The trial court correctly denied Reliable's motion to exclude the Gressers' expert witnesses. The trial court also correctly denied Reliable's summary judgment motions pertaining to the Gressers' negligence claims and to the possibility of a punitive damage award. The trial court erred by granting summary judgment in favor of Reliable on the issue of federal preemption.

22

Affirmed in part, reversed in part, and remanded for further proceedings.

FRIEDLANDER, J., and BROWN, J., concur.