

FILED
May 30 2017, 9:57 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

David W. Stone IV
Anderson, Indiana

John P. Nichols
Anderson & Nichols
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE

Mark D. Hassler
Jacob H. Miller
Hunt, Hassler, Kondras & Miller LLP
Terre Haute, IN

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Myra Duby as Guardian of L.H., a Minor, <br><br> *Appellant-Plaintiff,* <br><br> v. <br><br> Christopher Woolf, <br><br> *Appellee-Defendant.* | May 30, 2017 <br><br> Court of Appeals Case No. 84A05-1612-CT-2815 <br><br> Appeal from the Vigo Superior Court <br><br> The Honorable Lakshmi Reddy, Judge <br><br> Trial Court Cause No. 84D02-1201-CT-228 |

**Najam, Judge.**

## Statement of the Case

[1]   Myra Duby as Guardian of L.H., a minor, appeals the trial court's entry of summary judgment in favor of Christopher Woolf on Duby's complaint

alleging Woolf's negligence. Duby presents three issues for our review, which we consolidate and restate as:

1.  Whether the trial court abused its discretion when it excluded from evidence expert testimony proffered by Duby.

2.  Whether the trial court erred when it entered summary judgment in favor of Woolf.

We affirm.

## Facts and Procedural History

On January 21, 2004, Duby's daughter A.S. gave birth to L.H. While she was pregnant with L.H., A.S. had used methamphetamine "daily," and she also smoked marijuana. Appellant's App. Vol. III at 32. In March 2004, L.H. and his older sister began living with Duby at her rental house in Terre Haute. In December 2005, Dr. Jennifer Crocker evaluated L.H. regarding "developmental delay, toe walking, blank stares, and speech delay." *Id.* at 54. In January 2006, Dr. James Pappas evaluated L.H. and "felt that he met diagnostic criteria for autism spectrum and began a workup to rule out another etiology for his developmental delay[.]" *Id.* Testing done at that time revealed that L.H. had "a negative lead level[.]" *Id.* L.H. received occupational and developmental therapy through First Steps, and Dr. Crocker referred him to an autism clinic.

In July 2007, a physician determined that L.H. had elevated lead levels in his blood, specifically twenty micrograms of lead per deciliter of blood.[1] L.H. continued to suffer from developmental delays and autism. After someone from the Vigo County Health Department found lead paint and lead dust in Duby's rental house, which was owned by Woolf, Duby and the children moved out.

On January 12, 2012, Duby filed a complaint against Woolf alleging that his negligence had caused L.H.'s lead exposure which, in turn, had caused "significant and severe physical and cognitive impairments."[2] Appellant's App. Vol. II at 19. Leading up to trial, on September 25, 2015, Duby filed her final witness and exhibit list, which listed as an expert witness Angela Boyd, R.N. On October 2, Woolf filed a motion to exclude Boyd's expert testimony, and on October 24, the trial court ordered that Boyd's proffered expert testimony would be excluded from the evidence. In particular, the court found and concluded as follows:

> Defendant argues that Plaintiff's witness, Angela Marie Boyd, R[.]N[.], should be excluded from providing expert opinion testimony under Indiana Rules of Evidence 702 for the following reasons: (1) she lacks sufficient knowledge, skill, experience,

---

[1] The highest level considered in the normal range for children is five micrograms of lead per deciliter of blood.

[2] It is unclear whether Duby blames *only* L.H.'s autism on the lead exposure or also other behavioral problems. In any event, Duby does not differentiate between L.H.'s autism and any other alleged injuries. Accordingly, we address only whether there is a genuine issue of material fact regarding the proximate cause of L.H.'s autism.

training, or education to testify in the form of an opinion with respect to the cause of the Plaintiff's illness; (2) the testimony would not help the trier of fact to understand the evidence or to determine a fact in issue; and (3) she is incapable of articulating the scientific principles upon which her opinion rests. Plaintiff, on the other hand, argues that Angela Marie Boyd, R[.]N[.] does have sufficient knowledge, skill, experience, training and education because she has more training in the area of lead poisoning than a nurse and most doctors.

Plaintiff states in the Response Brief that Angela Marie Boyd's opinion is that the Plaintiff's various health issues were a result of lead exposure. In other words, Plaintiff's nurse expert is prepared to testify as to the causation of Plaintiff's health issues. The Indiana appellate courts have generally concluded that nurses cannot "testify as expert witnesses regarding medical causation and medical standards of care." *Curts v. Miller's Health Systems, Inc.*, 972 N.E.2d 966, 969 (Ind. Ct. App. 2012) (citing *Nasser v. St. Vincent Hosp. & Health Servs.*, 926 N.E.2d 43, 44 (Ind. Ct. App, 2010)). . . .

* * *

In this particular case, Plaintiff argues that Nurse Boyd is a registered nurse, has a master's degree in molecular biology, and was employed full time for four (4) years by the Vigo County Health Department where she was the head case manager for lead poisoning. Nurse Boyd took classes on lead poisoning, lead intoxication and symptoms, and the effects of the same on the human body. Nurse Boyd had doctors come to her for internships to learn about lead poisoning and she conducted case management training events with the Indiana Department of Health. However, the fact that Nurse Boyd might have more knowledge about lead poisoning does not mean that she has more knowledge as to what kinds of health conditions are caused specifically by lead poisoning. In fact, this is somewhat similar to [*Long v. Methodist Hospital of Indiana*, 699 N.E.2d 1164 (Ind. Ct.

App. 1998),] where the trial court determined and the appellate court affirmed that a registered nurse with training in cardiac care "does not qualify her to testify as an expert on the causation of post-operative wound infection" after open heart surgery. *Long*, 699 N.E.2d at 1167. Likewise, Nurse Boyd's training in lead poisoning and symptoms does not qualify her to testify as to whether the lead poisoning causes certain illnesses.

*None of the credentials and experience presented by Plaintiff demonstrate that Nurse Boyd is qualified as an expert on the issues of diagnosis and causation.* In fact, Nurse Boyd stated in her deposition that "she is not an expert in diagnosing lead poisoning" but that she is an expert ["]dealing with lead poisoning and the symptoms of lead poisoning." There was no argument presented that Nurse Boyd has concluded based upon her own personal observations that other children have been diagnosed with autism and other disorders because of lead poisoning.

As several appellate courts have stated, there is a vast difference in the education, training and authority to diagnose and treat diseases. Nurse Boyd is not qualified to diagnose the Plaintiff with lead poisoning or even autism and the other health issues that physicians have diagnosed Plaintiff with [sic]. The Court further finds that Nurse Boyd is not qualified to provide an expert opinion on what caused the Plaintiff's health issues, especially when she admitted that she has not reviewed prior medical records of Plaintiff and Plaintiff's mother while she was pregnant. To allow Nurse Boyd to testify on causation would appear to be in contradiction of the purpose of Indiana Rule of Evidence 702.

For the foregoing reasons, Defendant's Motion to Exclude Opinion Testimony of Angela Marie Boyd on the issue of medical causation is GRANTED. However, while Nurse Boyd may not be qualified as an expert to testify on causation, she may be qualified as an expert on lead poisoning and to testify to matters relating thereto.

*Id.* at 11-13 (emphasis added).

[6]    On April 29, 2016, Woolf moved for summary judgment. In her brief and memorandum in opposition to summary judgment, Duby designated evidence including Boyd's deposition testimony. Woolf moved to strike portions of Boyd's deposition testimony, and the trial court granted that motion in part. The trial court granted summary judgment in favor of Woolf following a hearing. Duby filed a motion to correct error, which the court denied. This appeal ensued.

## Discussion and Decision

### Issue One: Boyd's Testimony

[7]    Duby first contends that the trial court abused its discretion when it excluded the proffered expert testimony by Boyd that Woolf's negligence caused L.H.'s autism.

> The admission or exclusion of expert testimony lies within the sound discretion of the trial court, and will not be reversed absent an abuse of that discretion. *Hannan v. Pest Control Servs., Inc.*, 734 N.E.2d 674, 679 (Ind. Ct. App. 2000), *trans. denied*. Indiana Evidence Rule 702, governing expert testimony, contains two requirements for a witness to qualify as an expert: "(1) the subject matter is distinctly related to some scientific field, business or profession beyond the knowledge of the average lay person; and (2) the witness is shown to have sufficient skill, knowledge or experience in that area so that the opinion will aid the trier of fact." *Bacher v. State*, 686 N.E.2d 791, 800 (Ind. 1997). Further, "[e]xpert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable." Evid. R. 702(b). "*The focus of*

*the admissibility test must remain on the methodology of the theory or technique, not on the conclusions generated.*" *Ollis v. Knecht*, 751 N.E.2d 825, 829 (Ind. Ct. App. 2001) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)), *trans. denied*.

*Miller v. Barnard*, 957 N.E.2d 685, 693 (Ind. Ct. App. 2011) (emphasis added).

[8] On appeal, Duby maintains that Boyd "has sufficient skill, experience[,] and knowledge in the area of lead poisoning to give an opinion that would aid the fact finder." Appellant's Br. at 15. Duby points out that Boyd: is a registered nurse and also has a master's degree in molecular biology; has attended "at least 5 or 6 training events or conferences held by the Indiana Department of Health that dealt with lead as one of the topics covered";[3] was a case manager in the lead prevention program for Vigo County; "considers herself a specialist in the symptoms and outcomes for lead poisoning"; and has read "more than a dozen articles in medical journals on lead poisoning, symptoms[,] and correlations." *Id.* at 16. Thus, Duby asserts that Boyd is qualified to testify as an expert witness that L.H.'s autism was caused by lead poisoning.

[9] But Duby does not direct us to anything in the record on appeal showing Boyd's reasoning or methodology underlying her testimony, nor does she direct us to anything in the record showing that Boyd's reasoning is scientifically valid and can be applied to the facts in this case. *See, e.g., Bennett v. Richmond*, 960

---

[3] Boyd testified that those training events covered issues such as learning how to evaluate homes for lead contamination and educating families about lead poisoning.

N.E.2d 782, 791 (Ind. 2012). Indeed, Boyd acknowledged that she is not qualified to *diagnose* autism or other health conditions related to lead poisoning. Rather, she testified that she based her opinion on the cause of L.H.'s autism "on facts and evidence in the State declaration that he was lead poisoned." Appellant's App. Vol. II at 84. Boyd merely testified that "lead poisoning does cause autism, and this child had such high lead levels, I mean almost all children with levels this high have autism." *Id.* at 85.

[10] Further, Boyd acknowledged that she did not conduct "any sort of physical examination or evaluation of [L.H.]." in making her conclusions about the cause of his autism, and she did not review his medical records. *Id.* at 98. And, while she opined that there was "no evidence" of any connection between L.H.'s mother's methamphetamine use during her pregnancy and L.H.'s autism, again, Boyd did not review L.H.'s medical records, and Boyd could not identify "the research" backing up that opinion other than to state, "I think it's like the American Journal of Pediatrics Reviews [sic]." *Id.* at 93. Duby has not shown that the trial court abused its discretion when it excluded Boyd's testimony regarding the purported diagnosis and causation of L.H.'s autism.

### Issue Two: Summary Judgment

[11] Duby next contends that the trial court erred when it entered summary judgment in favor of Woolf. Our standard of review is clear. "We first observe that a trial court's order granting summary judgment comes to us 'cloaked with a presumption of validity.'" *DiMaggio v. Rosario*, 52 N.E.2d 896, 903 (Ind. Ct. App. 2016) (internal citations omitted). Further,

> [w]e review summary judgment *de novo*, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (internal citations omitted).
>
> The initial burden is on the summary-judgment movant to "demonstrate [ ] the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an issue for the trier of fact. *Id.* at 761-62 (internal quotation marks and substitution omitted). And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court." *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 909-10 (Ind. 2009) (internal quotation marks omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (alterations original to *Hughley*). However, we will affirm the "trial court's entry of summary judgment if it can be sustained on any theory or basis in the record." *DiMaggio*, 52 N.E.3d at 904.

[12] We emphasize that summary judgment is a "high bar" for the moving party to clear in Indiana. *Hughley*, 15 N.E.3d at 1004. "In particular, while federal

practice permits the moving party to merely show that the party carrying the burden of proof [at trial] lacks evidence on a necessary element, we impose a more onerous burden:  to affirmatively 'negate an opponent's claim.'"  *Id.* at 1003 (quoting *Jarboe v. Landmark Comm. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 123 (Ind. 1994)).  Summary judgment is rarely appropriate in negligence cases because they are particularly fact sensitive and are governed by a standard of the objective reasonable person, which is best applied by a jury after hearing all the evidence.  *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004).  Nonetheless, summary judgment is appropriate when the undisputed material evidence negates one element of a negligence claim.  *Id.* at 385.

[13]  To prove a negligence claim, a plaintiff must show that (1) the defendant owed plaintiff a duty, (2) the defendant breached that duty, and (3) plaintiff's injury was proximately caused by the breach.  *Winfrey v. NLMP, Inc.*, 963 N.E.2d 609, 612 (Ind. Ct. App. 2012).  Here, Duby's complaint alleges what is known as a "toxic tort."  As this court has explained,

> [s]pecific causation in a toxic tort case is "usually" supported by evidence of the plaintiffs' exposure "to a particular causative agent and the dose or amounts thereof, the temporal relationship between the exposure and the occurrence of the [injuries], scientific conclusions as to the amount of exposure necessary to cause the disease, and the elimination of other possible causes or explanations for the plaintiff[s'] [injuries]." *Aurand v. Norfolk S. Ry., Co.*, 802 F.Supp.2d 950, 959 (N.D. Ind. 2011).  Indiana courts do not require proof of each element in every case but will exclude expert testimony where none of the elements is shown. *Outlaw v. Erbrich Products Co.*, 777 N.E.2d 14, 29 (Ind. Ct. App. 2002), *trans. denied*.  In particular, we have held that when an

expert witness testifies in a chemical exposure case "that the exposure has caused a particular condition because the plaintiff was exposed and later experienced symptoms, without having analyzed the level, concentration or duration of the exposure to the chemicals in question, and without sufficiently accounting for the possibility of alternative causes," the expert's opinion is insufficient to establish causation. *Id.* (emphasis added). "An expert's opinion is insufficient to establish causation when it is based only upon a temporal relationship between an event and a subsequent medical condition." *Id.* (emphasis added).

*Gresser v. Dow Chem. Co.*, 989 N.E.2d 339, 347 (Ind. Ct. App. 2013), *trans. denied*.

[14] Here, in support of his summary judgment motion, Woolf designated expert testimony showing that the lead present in Duby's house was not the proximate cause of L.H.'s autism. In particular, Dr. Theodore Nukes, a neurologist, evaluated L.H. by obtaining L.H.'s history from Duby, conducting a physical examination of L.H., conducting a seven-part neurological examination of L.H., and reviewing more than 1,000 pages of L.H.'s medical records. Dr. Nukes testified that L.H. was "born with an autistic spectrum disorder," either due to his mother's methamphetamine use while he was in utero or due to genetic factors. Appellant's App. Vol. III at 83-84. And Dr. Nukes concluded that there was "absolutely no data that [he] reviewed that showed that lead was any factor in either . . . producing [L.H.]'s initial . . . autistic spectrum disorder or exacerbating his current condition." *Id.* at 84-85. Thus, Woolf negated one element of Duby's negligence claim. The burden then shifted to Duby to

designate evidence to establish a genuine issue of material fact on proximate cause to preclude summary judgment.

[15] Duby maintains that, when Boyd's testimony is "considered together with the other designated evidence, it is clear that there is a genuine issue of material fact on the issue of causation." Appellant's Br. at 20. Because we hold that the court did not abuse its discretion when it excluded Boyd's testimony on causation, Duby can only prevail on appeal if there is other designated evidence showing proximate cause. To that end, Duby cites testimony by Dr. Philip Reed that: there "*could be*" a relationship between L.H.'s "behavior problems" and the high lead levels; "you certainly *would expect* some cognitive problems related to lead exposure"; "even at very low levels lead *can cause* behavior problems"; and lead exposure "*could* add to the problems [L.H.] was experiencing." Appellant's Br. at 23 (emphases added). But, as the trial court found, that testimony is too general and speculative to show causation here. Moreover, Dr. Reed *concluded* that there was no connection between L.H.'s elevated lead level in July 2007 and his autism.

[16] Still, Duby asserts that there "are many articles in medical journals on the adverse effects of lead exposure on young children" and cites to *Palmer v. Asarco, Inc.*, 510 F. Supp. 2d 519, 523 n.1 (N.D. Okla. 2007) as citing such articles. *Id.* But while there may be evidence that lead exposure can have "adverse effects" on children, Duby does not direct us to designated evidence showing that L.H.'s lead exposure caused his autism. Thus, Duby has not

shown that there is a genuine issue of material fact on the element of proximate cause.

[17] Finally, Duby also contends that the trial court erred when it entered summary judgment in favor of Woolf on her "claim of [Woolf's] disclosure violations" under 42 U.S.C. §§ 4851 to 4856. Appellant's Br. at 27. In particular, Duby maintains that Woolf "did not seek summary judgment on the claim of [his] disclosure violations" and, therefore, the trial court "improperly granted summary judgment on the entire case." *Id.* at 29. But, while Duby included in her list of contentions[4] an allegation that Woolf failed to advise her of the presence of lead in the rental home and failed to remedy the problem when it was discovered, Duby did not make any reference to 42 U.S.C. §§ 4851 to 4856 to the trial court. Neither did Duby set out a separate claim alleging disclosure violations in her memorandum in opposition to summary judgment.[5] Accordingly, the issue is waived. *See Yoost v. Zalcberg*, 925 N.E.2d 763, 770 (Ind. Ct. App. 2010), *trans. denied*. The trial court did not err when it entered summary judgment in favor of Woolf.

[18] Affirmed.

---

[4] On September 25, 2015, Duby submitted to the trial court her list of "Final Witnesses, Exhibits, Specific Contentions, Injuries and Special Damages." Appellant's App. Vol. II at 28. Woolf filed his summary judgment motion on April 29, 2016.

[5] We also note that Duby made no mention of this alleged error in her motion to correct error.

Riley, J., and Bradford, J., concur.