James R. SAPP, Appellant,

v.

FLAGSTAR BANK, FSB, Appellee.

No. 49A02–1101–PL–4.

Court of Appeals of Indiana.

Aug. 24, 2011.

Donald G. Orzeske, Stephanie M. Payne, Goodin Orzeske & Blackwell, P.C., Indianapolis, IN, Attorneys for Appellant.

Karen T. Moses, Shannon K. Reed, Baker & Daniels LLP, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

James R. Sapp ("Sapp") appeals the denial of his motion to correct error, which challenged a summary judgment order upon the claims of Flagstar Bank, FSB ("Flagstar") against Sapp for breach of contract, theft, conversion, and unjust enrichment. We affirm in part, reverse in part, and remand.

### Issues

Sapp presents four issues for review:

I.     Whether he is entitled to summary judgment on the breach of contract claim;

II. Whether the trial court improvidently granted summary judgment to Flagstar on the theft claim;

III. Whether the trial court improvidently granted summary judgment to Flagstar on the unjust enrichment claim; and

IV. Whether Flagstar is entitled to attorney's fees premised upon the theft claim.

## Facts and Procedural History

On August 23, 2005, at a Flagstar branch in Castleton, Sapp presented a check in the amount of $125,000 for deposit into the business account of SF7 LLC[1] ("the LLC Account"). The LLC Account was given a provisional settlement of $125,000. Flagstar lost the check. Two months later, on October 27, 2005, Flagstar notified Sapp of the loss and sought his assistance in identifying the source of the check. There was some indication that it had been drawn on a Flagstar account belonging to the Lenora M Sapp Trust.[2]

Sapp was unable or unwilling to disclose the maker of the $125,000 check that had been deposited. Flagstar threatened set-off from the Lenora M Sapp Trust account (identified by Sapp as a trust for the support of his mother, of which Sapp was trustee) and/or another account on which Sapp was a signator; however, Sapp issued checks drawn on the other accounts such that the funds were largely depleted.

Flagstar, unable to debit a particular account without the lost check, charged-back the deposit to the LLC Account on November 11, 2005. As the majority of the $125,000 had been removed in transactions over the preceding months, the charge-back resulted in a negative balance of $123,093.65. Flagstar was also unable to recoup the $123,093.65 from the Lenora M Sapp Trust account or an account owned by ESAPP, LLC. Flagstar then sued Sapp for theft, conversion, breach of contract, and unjust enrichment. When deposed, Sapp testified that the $125,000 deposit may have come from a cashier's check.

On March 1, 2010, Sapp filed a motion for summary judgment as to all counts of the amended complaint. Flagstar filed a cross-motion for summary judgment. On June 16, 2010, the trial court conducted a summary judgment hearing, at which argument of counsel was heard. Sapp argued that the provisional deposit became a final settlement under the Indiana Uniform Commercial Code ("the UCC")[3], and that his refusal to make funds available to cover an illegal charge-back could not constitute theft or conversion. Flagstar contended that, notwithstanding the provisions of the UCC,[4] Flagstar had a right to charge back the $125,000 deposit months later and, further, Flagstar had a right to set-off against the Lenora M Sapp Trust account, with which set-off Sapp had interfered.

On July 22, 2010, the trial court entered an order on the cross-motions, denying Sapp's motion and granting Flagstar's motion. The matter was set for a damages

1. The members of this limited liability company were Sapp, his wife Theresa Sapp, and his mother Lenora M. Sapp.

2. The deposit ticket lists a check numbered 20(illegible)(illegible)5 in the amount of $125,000. According to an exhibit contained in the designated materials, Lenora M Sapp Trust checks numbered 20001, 20002, 20003, 20004, and 20006 cleared but there was no corresponding entry for 20005.

3. Ind.Code Chapter 26–1–3—8.1.

4. Flagstar's attorney argued that its contract "trumped" the "default rules" of the UCC. (Tr. 24.)

hearing. On November 4, 2010, following a hearing on attorney's fees, the trial court entered an order against Sapp for $123,034.63 as "damages" and $77,498.50 in attorney's fees. The order clarified that summary judgment was entered in Flagstar's favor on the unjust enrichment and theft claims but denied as to the breach of contract claim. In response to Sapp's motion to correct error, the trial court further clarified that Sapp's motion for summary judgment on the breach of contract claim was denied and also denied a request to vacate the order for attorney's fees. Sapp appeals.

### Discussion and Decision

#### Standard of Review

Summary judgment is appropriate only if the pleadings and designated materials considered by the trial court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Yates v. Johnson County Bd. of Comm'rs*, 888 N.E.2d 842, 846 (Ind.Ct.App.2008). Our well-settled standard of review is the same as it was for the trial court. *Landmark Health Care Assocs. L.P. v. Bradbury*, 671 N.E.2d 113, 116 (Ind.1996).

We must construe all evidence in favor of the party opposing summary judgment, and all doubts as to the existence of a material issue must be resolved against the moving party. *Id.* at 847. However, once the movant has carried its initial burden of going forward under Trial Rule 56(C), the nonmovant must come forward with sufficient evidence demonstrating the existence of genuine factual issues, which should be resolved at trial. *Otto v. Park Garden Assocs.*, 612 N.E.2d 135, 138 (Ind. Ct.App.1993), *trans. denied*. If the nonmovant fails to meet his burden, and the law is with the movant, summary judgment should be granted. *Id.*

A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Huntington v. Riggs*, 862 N.E.2d 1263, 1266 (Ind.Ct.App. 2007), *trans. denied*. Questions of law are reviewed de novo and we owe no deference to the trial court's legal conclusions. *In re Guardianship of Phillips*, 926 N.E.2d 1103, 1106 (Ind.Ct.App.2010).

We may affirm the grant of summary judgment on any basis argued by the parties and supported by the record. *Payton v. Hadley*, 819 N.E.2d 432, 437 (Ind.Ct. App.2004). However, neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court. *Best Homes, Inc. v. Rainwater*, 714 N.E.2d 702, 705 (Ind.Ct. App.1999). Trial Rule 56(H) specifically prohibits this Court from reversing a grant of summary judgment on the ground that there is a genuine issue of material fact, unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court. *AutoXchange.com, Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 45 (Ind.Ct. App.2004).

Our standard of review is not altered by the fact that the parties made cross-motions for summary judgment. *Indiana Farmers Mut. Ins. Group v. Blaskie*, 727 N.E.2d 13, 15 (Ind.Ct.App.2000). Instead, we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

#### I. Breach of Contract

Summary judgment may be particularly appropriate in contract disputes, as interpretation of a contract presents a question of law and is reviewed de novo. *Stewart v. TT Commercial One, LLC*, 911 N.E.2d 51, 55 (Ind.Ct.App.2009), *trans. de-*

*nied.* When interpreting a contract, our paramount goal is to ascertain and effectuate the parties' intent. *Id.* at 56.

As a threshold matter, the parties dispute—at some length—whether their contract incorporated the provisions of Article 4 of Indiana's UCC, which applies to bank deposits and collections, and provides for time limitations upon charge-back of provisional settlements. Sapp relies upon UCC provisions to argue that Flagstar did not provide notice of dishonor of the $125,000 negotiable instrument before the settlement became final.

According to Flagstar, however, Sapp's "reliance on the UCC is misplaced," Appellee's Brief at 11, and the UCC provisions for charge-backs and finality of settlement are inapplicable because (1) the Agreement contemplates only a provisional settlement until actual collection of funds and (2) there is no explicit contractual reference to UCC time limitation for charge-backs. Flagstar asserts that Sapp contracted "to bear liability for any shortfalls in the account," Appellee's Brief at 21, and "Had Flagstar and Sapp intended for the Indiana Commercial Code to apply, they could have so stated in the Disclosure Form." Appellee's Brief at 14.

In essence, Flagstar's position is that the UCC time limitations must be explicitly adopted in a contract and, in the absence of such a provision, a depositor (under freedom of contract principles) may agree to indefinitely indemnify the bank, even for the bank's own negligence. In Flagstar's view, all risk of loss is on the depositor until final collection of an item. This position is contrary to law.

■ In general, the UCC applies to commercial banking transactions, but the parties may agree to alter provisions, although a bank's liability for its own negligence cannot be disclaimed. Indiana Code Section 26–1–4–102(b) provides in relevant part: "The liability of a bank for action or nonaction with respect to an item handled by it for purposes of presentment, payment, or collection is governed by the law of the place where the bank is located." As for variation by agreement, Indiana Code Section 26–1–4–103(a) provides:

The effect of the provisions of IC 26–1–4 may be varied by agreement, but the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure. However, the parties may determine by agreement the standards by which the bank's responsibility is to be measured if those standards are not manifestly unreasonable.

Here, the designated evidence includes the Business Deposit Account Disclosure Form ("the Agreement"), which provides:

This agreement is subject to applicable federal laws and the laws of the state of Michigan and Indiana (except to the extent that this agreement can and does vary such rules or laws). The body of state and federal law that governs our relationship with you, however, is too large and complex to be reproduced here.

(App.207.) We find no indication in the Agreement that the parties intended to fully opt-out of the application of the UCC. Moreover, the language of the Agreement is generally consistent with various UCC provisions relative to predictability and finality of banking transactions. Whether the charge-back provision in particular was altered by agreement will be discussed *infra.*

The Agreement provides that only provisional credit will be given for non-cash items "until collection is final ... including items drawn 'on us.'" (App.207.) Notwithstanding the broad language, Sapp con-

tends that a provisional settlement must become a final settlement no later than the midnight deadline of the eleventh business day.[5] With regard to chargebacks, Indiana Code Section 26–1–4–214(a) provides:

> If a collecting bank has made provisional settlement with its customer for an item and fails by reason of dishonor, suspension of payments by a bank, or otherwise to receive settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account, or obtain refund from its customer, whether or not it is able to return the item, if by its midnight deadline or *within a longer reasonable time* after it learns the facts it returns the item or sends notification of the facts. If the return or notice is delayed beyond the bank's midnight deadline or a longer reasonable time after it learns the facts, the bank may revoke the settlement, charge back the credit, or obtain refund from its customer, but it is liable for any loss resulting from the delay. These rights to revoke, charge back, and obtain refund terminate if and when a settlement for the item received by the bank is or becomes final.

(emphasis added.) At the summary judgment hearing, Flagstar argued, and Sapp conceded, that Flagstar was both the depository bank and payor bank. In such a case, the right of charge-back is addressed by subsection (c) also:

> A depository bank that is also the payor may charge back the amount of an item to its customer's account or obtain refund in accordance with the section governing return of an item received by a

payor bank for credit on its books (IC 26–1–4–301).

Indiana Code Section 26–1–4–301(b) provides:

> If a demand item is received by a payor bank for credit on its books, it may return the item or send notice of dishonor and may revoke any credit given or recover the amount thereof withdrawn by its customer, if it acts within the time limit and in the manner specified in subsection (a).

Subsection (a) provides:

> If a payor bank settles for a demand item other than a documentary draft presented otherwise than for immediate payment over the counter before midnight of the banking day of receipt, the payor bank may revoke the settlement and recover the settlement if, before it has made final payment and before its midnight deadline, it:
>
> (1) returns the item;
>
> (2) returns an image of the item, if the party to which the return is made has entered in an agreement to accept an image as a return of the item and the image is returned in accordance with that agreement; or
>
> (3) sends a record providing notice of dishonor or nonpayment if the item is unavailable for return.

The above-referenced "midnight deadline" is defined in Indiana Code Section 26–1–4–104(11): " 'midnight deadline' with respect to a bank is midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later." Subsection (12) defines "settle" as

---

**5.** *See* Ind.Code § 26–1–4–215. Sapp also references 12 CFR § 229.13 (applicable to trans- actions between banks).

"to pay in cash, by clearing-house settlement, in a charge or credit, or by remittance, or otherwise as instructed." A settlement may be either provisional or final.

Indiana Code Section 26–1–4–215, governing when provisional debits and credits become final, provides in relevant part:

(a) An item is finally paid by a payor bank when the bank has first done any of the following:

(1) Paid the item in cash.

(2) Settled for the item without having a right to revoke the settlement under statute, clearing-house rule, or agreement.

(3) Made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearing-house rule, or agreement.

In the section entitled "Your Ability to Withdraw Funds," the Agreement provides that funds deposited by check may be delayed when "we believe a check you deposit will not be paid" or "you deposit checks totaling more than $5,000 on any one day." (App.165.) The Agreement further provides that, in such circumstances, "we will notify you if we delay your ability to withdraw funds for any of these reasons, and we will tell you when the funds will be available. They will generally be available no later than the eleventh business day after the day of your deposit." (App.165.)

As such, the Agreement employed language consistent with the UCC. A depositor entering into such a contract would reasonably expect to enjoy the protections of the UCC with regard to the allocation of risk and predictability and finality of commercial transactions. Ultimately, however, the UCC incorporates a standard of reasonableness for final settlement.

It is not disputed that Flagstar lost the check here at issue and notified Sapp two months later. To the extent that the Agreement may be said to have varied some UCC provisions by agreement (notwithstanding its recognition of the general applicability of federal and state laws), it cannot operate to indemnify Flagstar for its own failure to exercise ordinary care. The reason the funds were available to Sapp is the bank's loss of the check and failure to identify its risk during that time period. Ultimately, Sapp could not have contracted to insulate the bank from its own failure to exercise ordinary care. *See* Ind.Code § 26–1–4–103(a).

The dispute between Flagstar and Sapp is not resolved by construction of contract terms. To date, no fact-finder has determined whether or not the bank's loss of the check and two-month acquiescence was a failure to exercise ordinary care. Accordingly, a genuine issue of material fact precludes the entry of summary judgment.

## II. *Theft*

Pursuant to the Agreement, Flagstar could offset a deficiency in the LLC Account by taking funds from another account in which Sapp was a primary owner. Flagstar alleged that Sapp committed theft by preventing a set-off for the charged-back deposit:

On information and belief, Sapp withdrew the $183,000 from his accounts in order to prohibit Flagstar from reimbursing itself for the uncollected deposit. As a result, by withdrawing the $183,000 from his accounts, Sapp knowingly and/or intentionally has exerted unauthorized control over the property of Flagstar with the intent to deprive Flagstar of that property.

(App.8.) As such, Flagstar sought recovery pursuant to Indiana Code Section 34–24–3–1, which permits a victim of certain crimes, including theft and conversion, to

bring a civil action for treble damages and attorney's fees. However, the statute does not apply to the mere failure to pay a debt. *Tobin v. Ruman,* 819 N.E.2d 78, 89 (Ind. Ct.App.2004), *trans. denied.*

■ The trial court granted summary judgment to Flagstar on the theft count as opposed to the alternatively-alleged conversion count. A criminal conviction for theft is not a condition precedent to recovery in a civil action for theft. *Cf. Breining v. Harkness,* 872 N.E.2d 155, 159 (Ind.Ct. App.2007) (discussing establishment of civil action for conversion), *trans. denied.* Rather, a claimant must merely prove commission of the crime by a preponderance of the evidence. *Id.*

To qualify for remedies under Indiana Code Section 34-24-3-1, Flagstar would be required to show that it suffered a pecuniary loss as a result of Sapp's commission of theft. Under Indiana Code Section 35-43-4-2(a), "a person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony."

Flagstar, as the party seeking summary judgment on this claim, bore the burden to make a prima facie showing that there are no genuine issues of material fact and that Flagstar was entitled to judgment as a matter of law. *Am. Mgmt., Inc. v. MIF Realty, L.P.,* 666 N.E.2d 424, 428 (Ind.Ct. App.1996). It is only when the moving party satisfies this burden through evidence designated to the trial court pursuant to Trial Rule 56 that the nonmoving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial. *Id.*

■ Sapp admits that he negotiated trust fund checks amounting to $183,000, after having knowledge that Flagstar de-

sired a set-off against accounts upon which Sapp was a signatory. Admittedly, the withdrawal of funds prevented Flagstar from attempting an offset from those funds. However, Flagstar has designated no materials that indicate Sapp removed funds from an account of which he was a primary owner as opposed to a trustee or minority shareholder. Moreover, it was undisputed that Sapp had a right to negotiate checks or withdraw funds.

Nonetheless, an element of the theft statute was negated in that Sapp did not exert "unauthorized" control over the funds. Again, these were funds available for withdrawal, and Sapp accessed them through honored negotiable instruments. Flagstar honored each of the Trust checks that it claims were the vehicle whereby Sapp allegedly accomplished "theft." Flagstar did not come forward with sufficient designated materials to show that Sapp's control was without authorization such that he could have been found by a preponderance of the evidence to have criminally stolen the funds. Sapp is entitled to summary judgment upon this claim.

### III. Unjust Enrichment

■ Here, the parties' relationship as depositor and depositary was governed by contract. "The existence of express terms in a valid contract precludes the substitution of and the implication in law of terms regarding the subject matter covered by the express terms of the contract." *Keystone Carbon Co. v. Black,* 599 N.E.2d 213, 216 (Ind.Ct.App.1992), *trans. denied.* The equitable remedy of unjust enrichment was not available to Flagstar. Sapp is entitled to summary judgment upon this claim.

### IV. Attorney's Fees

Flagstar was awarded attorney's fees based upon Flagstar's purported establish-

ment of Sapp's commission of theft. Having determined that summary judgment on the theft count was improvidently granted, we also reverse the award of attorney's fees predicated thereon.

### Conclusion

A genuine issue of material fact precludes the entry of summary judgment on the contract claim. The designated materials establish that Sapp is entitled to judgment as a matter of law on the theft and unjust enrichment claims. Therefore, we remand for trial only upon the contract claim.

Affirmed in part, reversed in part, and remanded with instructions.

MATHIAS, J., and CRONE, J., concur.