# FOR PUBLICATION

ATTORNEYS FOR APPELLANTS:

**JEREMY N. GAYED**
**THOMAS M. KIMBROUGH**
Barrett & McNagny, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**JOHN C. THEISEN**
**NATHANIEL O. HUBLEY**
Thiesen Bowers & Associates, LLC
Fort Wayne, Indiana

**KARL L. MULVANEY**
**NANA QUAY-SMITH**
Bingham Greenebaum Doll, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHEROKEE AIR PRODUCTS, INC., CHEROKEE FAMILY LIMITED PARTNERSHIP, TIPPMANN INDUSTRIAL PRODUCTS, INC., DENNIS TIPPMANN, SR. FAMILY PARTNERSHIP, LLP, and TIPPMANN FARMS, LLC, | ) ) ) ) ) ) ) | |
| Appellants-Defendants, | ) ) | |
| vs. | ) ) | No. 02A05-1312-PL-635 |
| BRUCE E. BUCHAN, | ) ) | |
| Appellee-Plaintiff. | ) ) | |

FILED
Aug 06 2014, 8:13 am
CLERK
of the supreme court,
court of appeals and
tax court

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable David J. Avery, Judge
Cause No. 02D01-1102-PL-62

**August 6, 2014**

**OPINION - FOR PUBLICATION**

**GARRARD, Senior Judge**

Cherokee Air Products, Inc., Cherokee Family Limited Partnership, Tippmann Industrial Products, Inc., Dennis Tippmann, Sr. Family Partnership, LLP, and Tippmann Farm, LLC (collectively "Cherokee") bring this interlocutory appeal from the trial court's order granting partial summary judgment in favor of Bruce E. Buchan in an action alleging breach of his employment contract and seeking damages. Concluding that there are no genuine issues of material fact precluding the entry of partial summary judgment in favor of Buchan, we affirm.

Sometime in the late 1980s, Buchan, in his capacity as a certified public accountant for an independent accounting firm, began working with Dennis Tippmann, Sr. and Dennis Tippmann, Jr. providing tax preparation services and advice on business matters. Later in 2004, the Tippmanns sought the assistance of an individual to provide full-time assistance to them in managing and investing the family's wealth. The Tippmanns extended an offer to Buchan in 2005 to work for Cherokee, various business entities owned by the Tippmann family. After successfully reaching an agreement on Buchan's salary, Buchan began working for Cherokee in the summer of 2005 as an at-will employee. No employment contract was signed at that time.

On December 28, 2006, Cherokee presented Buchan with a draft employment contract. On May 14, 2007, Buchan proposed a revision to the draft contract adding a new section pertaining to his compensation. On December 11, 2007, Cherokee and Buchan executed the employment contract, which included Buchan's revision.[1] Because Buchan

---

[1] The last page of the employment contract contains a section labeled "CONSENT TO WAIVER OF CONFLICT." Appellants' App. p. 39. In that section, signed by Cherokee and Buchan, they agree to allow one law firm to represent them in the employment contract negotiations.

2

had been employed by Cherokee since 2005, the contract was made retroactive to January 1, 2006. The contract provisions will be discussed more specifically below, but, in general, the contract provided for an initial term of five years with an automatic renewal for up to three successive five-year periods. Either party could elect not to renew the contract by providing a ninety-day written notice prior to the expiration of the current term. If Buchan continued to be employed by Cherokee for twenty years, his contract would renew for successive one-year periods.

On September 29, 2010, Cherokee provided Buchan with a notice of non-renewal of his employment contract. Buchan's last day of employment was to be December 31, 2010. Buchan continued to work for Cherokee after receiving the notice, and on October 1, 2010, provided Cherokee with a notice of retirement indicating that his retirement would be effective December 31, 2010. On January 14, 2011, Cherokee sent a letter to Buchan informing him that Cherokee did not recognize his ability to retire after receipt of the notice of non-renewal and that Cherokee considered Buchan to be employed on December 31, 2010.

In February 2011, Buchan filed a complaint against Cherokee alleging that he did not receive timely compensation for accrued paid vacation days and that Cherokee had breached the contract by not paying him the remaining portion of his bonus upon his retirement. Cherokee filed a counterclaim against Buchan alleging breach of the duty of loyalty, breach of contract, fraud and constructive fraud, disgorgement, and conversion. Buchan filed a motion for partial summary judgment and Cherokee filed a motion for summary judgment in the matter. After a hearing on the motions for summary judgment

3

and other motions filed, the trial court took the matter under advisement, ultimately granting Buchan's motion for partial summary judgment on the issue of his entitlement to retire. The trial court denied the remainder of Buchan's motion for summary judgment and denied Cherokee's motion for summary judgment. The trial court granted Cherokee's request to certify the interlocutory order and this Court accepted Cherokee's interlocutory appeal.

Cherokee appeals from the trial court's order granting Buchan's motion for partial summary judgment. "When reviewing a grant or denial of a motion for summary judgment, our standard of review is the same as it is for the trial court." *Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012). We have set forth the applicable standard of review as follows:

> Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Once the moving party meets these two requirements, the burden shifts to the non-moving party to show the existence of a genuine issue of material fact by setting forth specifically designated facts. We must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmoving party, and resolve all doubts against the moving party.

*Ryan v. Brown*, 827 N.E.2d 112, 117 (Ind. Ct. App. 2005) (internal citations omitted). "[T]he fact that the parties have made cross-motions for summary judgment does not alter our standard of review. Rather, we consider each motion to determine whether the moving party is entitled to judgment as a matter of law." *Blasko v. Menard, Inc.*, 831 N.E.2d 271, 273 (Ind. Ct. App. 2005) (citation omitted).

4

Buchan sought partial summary judgment on the issue of his contractual entitlement to retire. Therefore, the trial court was required to interpret his employment contract. "Summary judgment is especially appropriate in the context of contract interpretation because the construction of a written contract is a question of law." *TW Gen. Contracting Servs., Inc. v. First Farmers Bank & Trust*, 904 N.E.2d 1285, 1287-88 (Ind. Ct. App. 2009).

> When the language of a written contract is not ambiguous, its meaning is a question of law for which summary judgment is particularly appropriate. In interpreting an unambiguous contract, we give effect to the intentions of the parties as expressed in the four corners of the instrument. Clear, plain, unambiguous terms are conclusive of that intent. We will neither construe clear and unambiguous provisions nor add provisions not agreed upon by the parties.

*Kaghann's Korner, Inc. v. Brown & Sons Fuel Co.*, 706 N.E.2d 556, 565 (Ind. Ct. App. 1999) (citations omitted), *clarified on reh'g on other grounds*. A contract is not ambiguous merely because the parties disagree as to its proper construction; rather, a contract will be found to be ambiguous only if reasonable persons would differ as to the meaning of its terms. *The Trs. of Ind. Univ. v. Cohen*, 910 N.E.2d 251, 257 (Ind. Ct. App. 2009). "We interpret a written contract by reading the contract as a whole, and we attempt to construe the language so as to not render any words, phrases, or terms ineffective or meaningless." *DLZ Indiana, LLC v. Greene Cnty.*, 902 N.E.2d 323, 327 (Ind. Ct. App. 2009). "And, in reading the terms of a contract together, we keep in mind that the more specific terms control over any inconsistent general statements." *Id*. at 328.

The only provision in the employment contract relating to retirement provides as follows:

3. COMPENSATION, RETIREMENT, DISABILITY, DEATH, DEFICITS

5

. . . .

B. <u>Retirement</u>.

    In the event the Employee retires, the bonus calculation will be as if the private equity funds were liquidated, the net worth of the private equity funds will be calculated and mutually agreed upon by both parties.

Appellants' App. p. 33.

Cherokee argues that Buchan was not entitled to retire after receiving notice of the non-renewal of his contract because that notice was a form of separation of the employment relationship. The non-renewal provision of the contract reads as follows:

2. <u>TERM OF AGREEMENT</u>:

    The term of this Agreement shall begin on the 1st day of January, 2006 and shall continue for a period of five (5) years, unless terminated as hereinafter set forth, and shall automatically renew for three (3) successive five (5) year periods unless either party gives a 90-day written notice of non-renewal prior to the expiration of any current term. After the last of the five (5) year terms, the contract shall be renewed for successive one (1) year periods unless either party gives a 90-day written notice prior to expiration of any current term.

<u>Id.</u> at 31-32. Also pertinent to our review of the trial court's decision is the provision for termination of employment, which reads as follows:

4. <u>TERMINATION OF EMPLOYMENT</u>.

    This agreement may be terminated at any time by the mutual agreement of the parties, by the death of the Employee, or by notice given by either party to the other, in writing, at least thirty (30) days before the intended effective date of the termination signifying the applicable party's intention to so terminate as of a specified date. Following any such notice of termination, the Employee shall fully cooperate with Cherokee in all matters relating to the winding up of his pending work on behalf of Cherokee and the orderly transfer of any such pending work to other employees of Cherokee as may be designated by Cherokee. Cherokee shall be entitled to such

6

services of the Employee as Cherokee may require during all or any part of the thirty (30) day period following any such notice of termination. However, Cherokee may elect that the Employee not perform his duties after said notice has been given.

Id. at 33-34. The contract details the compensation to be paid to Buchan if his employment is terminated for cause or without cause in subsections following that paragraph.

The trial court correctly concluded that Buchan was entitled to retire. There is no provision in the contract defining Buchan's eligibility to retire or the notice required to be given when announcing his intention to retire. Paragraph 3.B. was included in the employment contract at Buchan's request, a request to which Cherokee agreed. Thus, the contract clearly contemplated Buchan's ability to retire. Although Cherokee might have further negotiated the contract to add provisions related to such retirement, it did not do so, yet it was on notice that Buchan negotiated for the ability to retire and his compensation upon retirement.

Cherokee complied with the notice requirements of Paragraph 2 by tendering the ninety-day notice of non-renewal to Buchan on September 29, 2010. However, that notice did not serve as a termination of Buchan's employment in the meanwhile in 2010. According to the terms of the contract, that notice merely notified Buchan that his contract would not be renewed at the end of the year for an additional term. The notice of non-renewal did not affect Buchan's employment status for the remainder of the contract term. He remained employed under the contract, with all its rights and obligations until the term expired. Had Cherokee wished to terminate Buchan's employment, Paragraph 4 was the appropriate provision in that circumstance. It is uncontradicted that Buchan was still

7

employed and continued to work for Cherokee until the end of business on December 30, 2010.  The trial court did not err in concluding that the contract did not prohibit Buchan from retiring from his position.

In light of the foregoing, we affirm the trial court's decision.

MAY, J., and MATHIAS, J., concur.