## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 29 2020, 9:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mitchell A. Greene
Greene Law LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Julie A. Camden
Camden & Meridew, P.C.
Fishers, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| RE/MAX at the Crossing, <br> *Appellant-Defendant,* <br><br> v. <br><br> Telecom, LLC d/b/a Priority Communications, <br> *Appellee-Plaintiff* | May 29, 2020 <br><br> Court of Appeals Case No. 20A-PL-236 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Marc Rothenberg, Judge <br><br> Trial Court Cause No. 49D07-1904-PL-15156 |

**Crone, Judge.**

## Case Summary

[1] Telecom, LLC d/b/a Priority Communications (Priority) contracted to provide telecommunications services to RE/MAX at the Crossing for a minimum of

thirty-six months. RE/MAX terminated the contract early. Priority sued RE/MAX for breach of contract and moved for summary judgment. The trial court granted the motion and awarded Priority over $12,000 in damages. On appeal, RE/MAX argues that the trial court erred in granting summary judgment as to both liability and damages. We disagree and therefore affirm.

## Facts and Procedural History

In August 2017, Priority entered into a contract with RE/MAX to provide telecommunications services in exchange for monthly payments of $638. Including the cover page, the contract has four pages. One of the last lines on the third page states, "Term of Service: 36 Months[.]" Appellant's App. Vol. 2 at 8.[1] The fourth of the eleven brief terms and conditions on the last page states,

> Unless otherwise specified in the Order Form, the Services are offered for a minimum term of thirty six (36) months. The Term shall automatically renew for a additional terms [sic] equal to the initial term unless and until either party notifies the other party in writing at least thirty (30) days prior to the expiration of the term in effect at the time that it does not wish to renew the Service.

*Id.* at 9. In February 2019, RE/MAX terminated the contract.

Priority filed suit, alleging that RE/MAX breached the contract by terminating it early, and moved for summary judgment. In response, RE/MAX asserted

---

[1] RE/MAX's appendix does not contain a copy of the trial court's chronological case summary in violation of Indiana Appellate Rule 50(A)(2)(a), and a copy of the trial court's order appears at the end of the appendix in violation of Appellate Rule 51(B).

that the contract was ambiguous regarding its ability to terminate the agreement at will and that genuine issues of material fact existed regarding its affirmative defenses of mutual and unilateral mistake, as well as Priority's alleged damages. After a hearing, the trial court issued an order granting Priority's summary judgment motion. The court rejected RE/MAX's arguments regarding ambiguity and mistake and awarded Priority $12,760 in damages for the twenty months of unpaid service remaining on the contract. RE/MAX now appeals. Additional facts will be provided below.

## Discussion and Decision

[4] RE/MAX contends that the trial court erred in granting Priority's summary judgment motion. "Summary judgment is appropriate only if the pleadings and designated materials considered by the trial court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Sapp v. Flagstar Bank, FSB*, 956 N.E.2d 660, 663 (Ind. Ct. App. 2011). Our standard of review is the same as the trial court's. *Id.*

> We must construe all evidence in favor of the party opposing summary judgment, and all doubts as to the existence of a material issue must be resolved against the moving party. However, once the movant has carried its initial burden of going forward under Trial Rule 56(C), the nonmovant must come forward with sufficient evidence demonstrating the existence of genuine factual issues, which should be resolved at trial. If the nonmovant fails to meet his burden, and the law is with the movant, summary judgment should be granted.

*Id.* (citations omitted).

[5] A trial court's findings and conclusions are helpful and offer insight into its rationale, but they are not binding on us. *Hanna v. Ind. Farmers Mut. Ins. Co.*, 963 N.E.2d 72, 76 (Ind. Ct. App. 2012), *trans. denied*. "We will affirm on any theory or basis supported by the designated materials." *Id*. "The party that lost in the trial court has the burden of persuading us that the trial court erred." *Denson v. Estate of Dillard*, 116 N.E.3d 535, 539 (Ind. Ct. App. 2018).

[6] "Summary judgment may be particularly appropriate in contract disputes, as interpretation of a contract presents a question of law and is reviewed de novo." *Sapp*, 956 N.E.2d at 663. In construing a contract, the court must determine and effectuate the parties' intent. *Stenger v. LLC Corp.*, 819 N.E.2d 480, 484 (Ind. Ct. App. 2004), *trans. denied* (2005).

> If the language of the agreement is unambiguous and the intent of the parties is discernible from the written contract, the court must give effect to the terms of the contract. A contract is ambiguous if a reasonable person would find the contract subject to more than one interpretation. The terms of a contract are not ambiguous merely because the parties disagree as to their interpretation.

*Id*. (citations omitted). If contract language is unambiguous, the court may not look to extrinsic evidence to expand, vary, or explain the contract, but must determine the parties' intent from the four corners of the document. *Celadon Trucking Servs., Inc. v. Wilmoth*, 70 N.E.3d 833, 839 (Ind. Ct. App. 2017), *trans. denied*.

RE/MAX first contends that the contract "is at best ambiguous as to [RE/MAX's] ability to terminate the contract at will." Appellant's Br. at 14. RE/MAX claims that the phrase that Priority's services "'are offered for a minimum term of thirty six (36) months' could just as easily be construed by reasonable minds to be a guarantee by Priority that it will provide services for a period of at least 36 months, so long as [RE/MAX] chose to continue using its services." *Id*. We disagree. As the trial court observed, it would be "plainly inconsistent" to interpret the contract's thirty-six-month minimum term, "and each subsequent renewal period of thirty-six months, as also being 'month-to-month' or subject to cancellation at any time. There is no language suggesting a 'month-to-month' service agreement or that it could be cancelled at any time." Appealed Order at 3. We will not add terms not agreed upon by the parties. *Cherokee Air Prods., Inc. v. Buchan*, 14 N.E.3d 831, 834 (Ind. Ct. App. 2014).

Next, RE/MAX contends that genuine issues of material fact exist regarding the affirmative defenses of mutual and unilateral mistake, which may be grounds for equitably reforming a contract.

> In Indiana, courts may reform written documents in only two well-defined situations: (1) where there is a mutual mistake— meaning there has been a meeting of the minds, an agreement actually entered into, but the document in its written form does not express what the parties actually intended; or (2) where there has been a mistake by one party, accompanied by fraud or inequitable conduct by the remaining party.

*Monroe Guar. Ins. Co. v. Langreck*, 816 N.E.2d 485, 490 (Ind. Ct. App. 2004).

"Reformations for mistakes are only available if they are mistakes of fact, not mistakes of law." *Id*.

[9] "In summary judgment proceedings, as at trial, the burden of establishing the existence of material affirmative defenses is on the defendant. In order to meet this burden, a defendant must show that a genuine issue of material fact exists as to each element of the asserted affirmative defense." *Paint Shuttle, Inc. v. Cont'l Cas. Co.*, 733 N.E.2d 513, 519 (Ind. Ct. App. 2000) (citation omitted), *trans. denied* (2001). Here, RE/MAX designated the affidavit of its owner, Mike Jones, who averred that he met with two Priority representatives who "explained the phone services, application, and pricing to [him] that would be covered by the contract." Appellant's App. Vol. 2 at 27. Jones "specifically asked [them] how long the contract was for[,]" and they told him "that the contract would be month to month and could be cancelled at any time." *Id*. The Priority representatives "then showed [him] the contract that he was to sign." *Id*. at 28. Jones "briefly read through the contract and did not see anything that gave [him] the impression that the contract could not be cancelled at any time, relying on the statements of the Priority representatives." *Id*. He "signed the contract … under the impression that [he] was signing a month to month contract that could be cancelled at any time." *Id*.

[10] RE/MAX asserts that Jones's affidavit establishes a genuine issue of material fact as to whether RE/MAX and Priority were mutually mistaken regarding the terms of the contract and/or whether Priority misrepresented those terms to

RE/MAX. But RE/MAX's argument disregards the axiom that "[e]quity should not intervene and courts should not grant reformation if the party seeking reformation failed to read the instrument or, if it was read, failed to give heed to its plain terms." *Monroe*, 816 N.E.2d at 490.[2] Jones did read the contract and failed to give heed to its unambiguous thirty-six-month minimum term with no provision for at-will cancellation.

[11] Finally, RE/MAX contends that Priority failed to establish that it is entitled to $12,760 in damages as a matter of law. RE/MAX observes that an "injured party may not be placed in a better position than he would have enjoyed if the breach had not occurred." *Fowler v. Campbell*, 612 N.E.2d 596, 603 (Ind. Ct. App. 1993). RE/MAX further observes that Priority repossessed its telecommunications equipment shortly after the contract was terminated. RE/MAX states, "Priority now enjoys the use of that equipment to generate revenue by servicing other customers. To allow Priority to recover 20 months of revenue from [RE/MAX] *and* additional revenue from the returned equipment would place Priority in a better position than had the contract cancellation not occurred[.]" Appellant's Br. at 18.

[12] It is undisputed that if RE/MAX had not breached the contract, Priority would have been entitled to receive $638 per month over the last twenty months of the contract, for a total of $12,760. RE/MAX designated evidence, via Jones's

---

[2] We are unpersuaded by RE/MAX's reliance on cases involving extrinsic mistakes of fact.

affidavit, that Priority retrieved its equipment shortly after RE/MAX terminated the contract, but it designated no evidence that Priority has in fact generated additional revenue from that equipment. Priority may well have done so to fulfill its common-law duty to mitigate its damages, *Fischer v. Heymann*, 12 N.E.3d 867, 871 (Ind. 2014), but RE/MAX failed to establish a genuine issue of material fact on this point. *See Cmty. Fdn. of Nw. Ind. v. Miranda*, 120 N.E.3d 1090, 1109 (Ind. Ct. App. 2019) ("guesses, supposition, and conjecture are not sufficient to create a genuine issue of material fact to defeat summary judgment") (citation omitted). Accordingly, we affirm the trial court's entry of summary judgment for Priority in all respects.

[13] Affirmed.

Bailey, J., and Altice, J., concur.